IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

UNITED STATES OF AMERICA :
:
:
v. : CASE NO.: CR509-21
:
:
FRANKLIN W. LEE :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Franklin W. Lee ("Defendant") has been charged with mail fraud, in violation of 18 U.S.C. § 1341; and Social Security fraud, in violation of 42 U.S.C. § 408(a)(4). Defendant filed a Motion for Discovery consisting of several subsections, one of which was construed as a request for a Jackson-Denno hearing. The Government responded. The undersigned conducted a hearing on January 7, 2010, at which Marla McLendon ("Inspector McLendon") with the United States Postal Inspection Service testified.

## STATEMENT OF THE CASE

The credible testimony at the evidentiary hearing establishes the following:

Special Agent Michael Schexnayder with the Social Security Administration's Office of the Inspector General contacted Inspector McLendon. Special Agent Schexnayder informed Inspector McLendon that the Social Security Administration received information that Defendant was imprisoned and that a number of Social

Security checks intended for Defendant's benefit had gone through the mail system and had been negotiated. Inspector McLendon and Special Agent Schexnayder arranged to meet Defendant at Johnson State Prison on June 24, 2009. Before beginning the interview, Special Agent Schexnayder read an Advice of Rights form to Defendant, and Defendant acknowledged that he understood his rights by signing this form. (Gov't Ex. 1). Defendant was also read the "Waiver" portion of this form, which he signed. (Gov't Ex. 1). Approximately five (5) minutes after the interview began, Inspector McLendon and Special Agent Schexnayder were notified that the prison was under a lockdown. Defendant was taken to one part of the prison, while the investigators were taken to the front of the prison. Defendant and the investigators were brought back to an interview room about one hour later, at which time Special Agent Schexnayder reminded Defendant of his rights. Defendant nodded that he understood he had those rights available to him. Special Agent Schexnayder interviewed Defendant, and Defendant made incriminating statements. After 20 minutes, Defendant stood up and informed the investigators he was not talking to them any longer and that he wanted an attorney. McLendon testified that the interview ended at that time.

Defendant seemingly asserts[1] that any incriminating statements he may have made to Special Agent Schexnayder were not voluntarily given.

---

[1] Defendant does not label any part of his Motion as requesting a Jackson-Denno hearing, nor does a reading of his Motion reveal such a request. Defendant's counsel informed the Court, however, that an evidentiary hearing was required for his Jackson-Denno motion, (Doc. No. 28), and the undersigned entertained counsel's request.

## DISCUSSION AND CITATION TO AUTHORITY

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The circumstances of each case dictate "whether there is a restraint on the suspect's freedom of movement 'of the degree associated with a formal arrest.'" United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984)). There is no question that Defendant was subjected to a custodial interrogation at the time Inspector McLendon and Special Agent Schexnayder came to speak with him.

The United States Supreme Court's holding in Jackson v. Denno, 378 U.S. 368 (1964), governs the voluntariness of confessions, and in pertinent part provides:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

AO 72A
(Rev. 8/82)

378 U.S. at 376 (internal citation omitted). A confession is not "voluntary" pursuant to the Due Process Clause when law enforcement officials have used coercive conduct. Colorado v. Connelly, 479 U.S. 157, 167 (1986). Coercion can be mental or physical. Blackburn v. Alabama, 361 U.S. 199, 206 (1960); Chambers v. Florida, 309 U.S. 227, 237 (1940). The test for determining if a confession is the result of coercion requires a review of the "totality of the circumstances." Blackburn, 361 U.S. at 206 (citing Fikes v. Alabama, 352 U.S. 191, 197 (1957)). In examining the totality of the circumstances[2], it must be determined whether "the statement is the product of the accused's free and rational choice." Harris v. Dugger, 874 F.2d 756, 761 (11th Cir. 1989). "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005). Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment. However, "[a]bsent police conduct causally related to the confession, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 1296.

When a suspect undergoing custodial interrogation asserts his right to counsel, the interrogation must cease. Miranda, 384 U.S. at 474. "Under Miranda's prophylactic protection of the right against compelled self-incrimination, any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right." Montejo v. Louisiana, ___ U.S. ___, 129 S. Ct. 2079, 2089

---

[2] These potential circumstances include not only the crucial element of police coercion, but the length of the interrogation, its location, and its continuity, and the defendant's maturity, education, physical condition, and mental health. These circumstances also include the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation. Withrow v. Williams, 507 U.S. 680, 693-94 (1993) (internal citations omitted).

(May 26, 2009). Pursuant to the "prophylactic protection of the Miranda right found in Edwards v. Arizona, 451 U.S. 477 (1981), "once such a defendant 'has invoked his right to have counsel present,' interrogation must stop." Id. at 2090 (quoting Edwards, 451 U.S. at 484). Defendant invoked his right to an attorney during the interview, and the investigators stopped their interview immediately.

There is no evidence that Defendant was coerced into making incriminating statements. The evidence before the Court establishes that Defendant was informed of his rights; waived those rights before speaking to the investigators; was not subjected to a long interview process; the investigators did not use force against Plaintiff (or threaten to do so); and the investigators made no promises to Defendant. In addition, the investigators' interview of Defendant was interrupted for about an hour, and Defendant was re-advised of his rights upon the resumption of the interview. The evidence establishes that the statements Defendant made to Inspector McLendon and Special Agent Schexnayder prior to the invocation of his rights were freely and voluntarily made.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion be **DENIED**. The Government should be entitled to use any statements Defendant made to law enforcement officials on June 24, 2009, prior to the invocation of his rights.

**SO REPORTED** and **RECOMMENDED**, this 14th day of January, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)

5